UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GENTRY MONTGOMERY,                                      :

                                                        :    REPORT AND RECOMMENDATION
                              Plaintiff,                           11 Civ. 4645 (PAC)(GWG)
                                                        :

        -v.-                                             :

THOMAS HALL, et al.,                                    :

                                                        :
                              Defendants.               :
------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff Gentry Montgomery, currently incarcerated at the Auburn Correctional Facility

and proceeding pro se, brings this action under 42 U.S.C. § 1983, alleging that the defendants —

Warden Thomas Hall, Correction Officer ("C.O.") Kane, and C.O. Robert Hicks (collectively,

"defendants") — violated his constitutional rights when they conducted a strip search of him

while he was a pretrial detainee at the Manhattan Detention Complex ("MDC").  Defendants

have moved for summary judgment.  For the following reasons, this motion should be granted.

I.      BACKGROUND

        On a summary judgment motion, we "view the facts and draw reasonable inferences in

the light most favorable to the party opposing the summary judgment motion," Scott v. Harris,

550 U.S. 372, 378 (2007) (citation, internal quotation marks, and brackets omitted) — in this

case, Montgomery.  Montgomery's response to the summary judgment motion is contained in a

document entitled "Affirmation in Opposition to Motion for Summa[r]y Judgment," dated Jan.

22, 2013 (Docket # 38) ("Pl. Aff.").  This document contains no substantive allegations or

evidence regarding the incident alleged in the complaint.  But inasmuch as Montgomery's

complaint was sworn under penalty of perjury, <u>see</u> Complaint under the Civil Rights Act, 42 U.S.C. § 1983, dated May 21, 2011 (Docket # 2) ("Compl."), we accept it as admissible evidence in opposition to the defendants' motion.[1]

A.    <u>Montgomery's Allegations</u>

On May 11, 2010, between 7:00 and 7:30 in the morning, Montgomery was in a holding pen at the MDC awaiting a court appearance.  <u>Id.</u> ¶ II.A–C.  Montgomery was told to disrobe "in front of numerous detainee[s] with no partitions between [the detainees] or the male or female officers out and about carrying out their duties."  <u>Id.</u> ¶ II.D.  When he refused to remove his clothes, he was "then surrounded [and] then threatened to strip."  <u>Id.</u>  C.O. Kane said to Montgomery, "I don't care if you are 'Muslim' you still gonna [sic] strip."  <u>Id.</u>  Another detainee "consoled" him and told him to "just comply and write it up later," while other detainee[s] "stood around butt [sic] naked watching what was taking place."  <u>Id.</u> ¶ II.D.  Several other inmates witnessed the incident and underwent similar experiences "on that day or [the] day before or after."  <u>Id.</u>

Montgomery contends that the officers "d[i]srespected [him] as a human being" and "install[ed] fear" in him.  <u>Id.</u> ¶ III.  He states that "being forced to strip [and] bend over is one thing, but in front of others is humiliating and degrading[,] your personal busi[]ness is out there while they are standing around laughing and mak[ing] jokes like we are a he[]rd of cattle."  <u>Id.</u> ¶ V.  He requests $5 million "to compensate [him]self and the other (victims) detainees

---

[1]  We do not consider any statements contained in the grievance, dated May 14, 2011, that Montgomery attached to the complaint.  The grievance is unsworn and thus inadmissible. Also, it appears that it was attached to the complaint simply as proof that Montgomery had filed a grievance.  Finally, it does not contain any factual allegations not already included in the complaint.

invol[v]ed." Id.  He also requests "that their policy be enforce[d] and revised[,] the constitutional rights of all detainees stop be voilated [sic], that N.Y.C. Dept of Corr. stop abusing their authority and voilating [sic] the color of law." Id.

      B.    <u>Procedural History</u>

      Following discovery, defendants moved for summary judgment.  <u>See</u> Notice of Motion, filed Dec. 12, 2012 (Docket # 31); Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment, filed Dec. 12, 2012 (Docket # 32); Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, filed Dec. 12, 2012 (Docket # 33); Declaration of Felicia A. Yancey in Support of Defendants' Motion for Summary Judgment, filed Dec. 12, 2012 (Docket # 34); Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed Dec. 12, 2012 (Docket # 35) ("Def. Mem.").  Montgomery filed an affirmation opposing the motion.  <u>See</u> Pl. Aff.  Defendants requested that this affirmation be disregarded and declined to submit a formal reply.  <u>See</u> Letter from Felicia A. Yancey to the Honorable Gabriel W. Gorenstein, dated Feb. 11, 2013 (Docket # 40).

II.    <u>LAW GOVERNING SUMMARY JUDGMENT MOTIONS</u>

      Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); <u>see</u> also <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

      In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the

nonmoving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

Nevertheless, once the moving party has shown that there is no genuine issue as to any material

fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come

forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (additional

citation omitted) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or

unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations

omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable

juror could return a verdict in his favor." Anderson, 477 U.S. at 256.  Where "the nonmoving

party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to

'make a showing sufficient to establish the existence of an element essential to [its] case.'"

Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quoting Celotex, 477

U.S. at 322).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff

fails to come forward with enough evidence to create a genuine factual issue to be tried with

respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996)

(citing Anderson, 477 U.S. at 247–48).

    Because Montgomery is proceeding pro se, we construe his papers "liberally and

interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174

F.3d 276, 280 (2d Cir. 1999) (citation and internal quotation marks omitted).  Nonetheless, "our

application of this different standard does not relieve plaintiff of his duty to meet the

requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony

Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal citation and quotation marks omitted); accord

Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to

which a <u>pro se</u> litigant is entitled, as well as the deference accorded to a non-movant on a

summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's

showing and to establish that there are material issues of fact requiring a trial.") (internal

punctuation and citations omitted), <u>aff'd</u>, 441 F. App'x 816 (2d Cir. 2011).

III.    <u>DISCUSSION</u>

      Defendants seek summary judgment on several grounds: (1) Montgomery failed to allege

personal involvement by Warden Thomas Hall, Pl. Mem. at 4–6; (2) the New York City

Department of Correction is not a suable entity, and Montgomery has failed to assert claims of

municipal liability against the City of New York, <u>id.</u> at 6–7; (3) Montgomery's strip search claim

fails as a matter of law because the search did not violate his First, Fourth, or Eighth Amendment

rights, <u>id.</u> at 7–13; (4) defendants are entitled to qualified immunity, <u>id.</u> at 14–15; and (5)

Montgomery's claims are unexhausted and therefore barred, <u>id.</u> at 15–20.  Because the

defendants are entitled to summary judgment on the merits of Montgomery's claim, it is

unnnecessary to reach the other grounds they raise.

      To state a claim under § 1983, Montgomery must show that he was denied a

constitutional or federal statutory right and that the deprivation of that right occurred under color

of state law.  <u>See</u> 42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  Section 1983 does

not grant any substantive rights but rather "provides only a procedure for redress for the

deprivation of rights established elsewhere," such as in the Constitution or federal statutes.

<u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert. denied</u>, 512 U.S. 1240

(1994).  Here, Montgomery claims that defendants violated his constitutional rights when he was

ordered to participate in a "strip body cavity search" before he left the MDC for a court

appearance.  <u>See</u> Compl. ¶ II.D.

5

Montgomery's claim fails because the strip search he describes did not violate the federal constitution.  Strip searches of pretrial detainees are constitutional when they are reasonably related to a "legitimate penological interest."  Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1515 (2012) (internal quotation marks omitted) (citing cases) (upholding constitutionality of strip search of detainee arrested on minor charge prior to his introduction to the general prison population).  "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."  Id. at 1517 (internal citations omitted).  Prison officials need not possess probable cause to conduct a strip search of inmates. Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citing Bell v. Wolfish, 441 U.S. 520, 559 (1979); Covino v. Patrissi, 967 F.2d 73, 79 (2d Cir. 1992); Michenfelder v. Sumner, 860 F.2d 328, 332–33 (9th Cir. 1988)), aff'd, 461 F. App'x 18 (2d Cir. 2012).  In assessing the reasonableness of a strip search, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Hodges v. Stanley, 712 F.2d 34, 35 (2d Cir. 1983) (alteration in original) (quoting Bell, 441 U.S. at 559).  "[I]n the absence of substantial evidence in the record to indicate that [prison] officials have exaggerated their response to [legitimate security] considerations courts should ordinarily defer to their expert judgment in such matters." Florence, 132 S. Ct. at 1517 (internal citation and quotation marks omitted).

Under this framework, Montgomery has not met his burden of proving that the strip search he describes was unconstitutional.  Requiring detainees at the MDC to submit to a strip search prior to departing the facility for a court appearance serves the legitimate penological interest of "preventing the smuggling of contraband into or out of" the MDC.  Myers v. City of N.Y., 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012); accord Bell, 441 U.S. at 558–60

6

(upholding strip searches of pretrial detainees following visits with outside individuals and noting that "[s]muggling of money, drugs, weapons, and other contraband [in correctional facilities] is all too common an occurrence."); Israel v. City of N.Y., 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding strip searches at the MDC upon departure and return from court appearances constitutional in light of "the legitimate interest of preventing the smuggling of contraband," and granting summary judgment to defendants).

Montgomery asserts that the particular search at issue was not "conducted properly" according to "proper strip search procedures."  Pl. Aff. at 3–4 ("[I]f the search was conducted properly and in accordance with the 4th, 1st, and 8th amendment mandates of issues of this [n]ature, . . . the issue of the plaintiff feeling disrespect[ed], fearful and humiliated would have been of no consequence.").  Thus, he asserts that it is "disputable . . . whether or not the search . . . was conducted in accordance with departmental regulations."  Id. at 2.  Montgomery does not specify, however, what regulation he contends was violated.  In any event, whether the search was conducted in compliance with a department regulation is not part of the constitutional analysis.  What is important is that Montgomery has provided no evidence that the strip search at issue constituted an "exaggerated" response to security concerns at the MDC.  See Florence, 132 S. Ct. at 1517; Malik v. City of N.Y., 2012 WL 3345317, at *13 (S.D.N.Y. Aug. 15, 2012) (where searches are part of routine, "institutional" searches, "[r]outine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment") (alteration in original) (internal citation and quotation marks omitted).

That the search was conducted without "partitions" and that there were "male or female officers out and about carrying out their duties" similarly does not show that the strip search was overly invasive or went beyond the scope of what was necessary.  Case law reflects that the

constitutionality of a strip search is not negated by the presence of other inmates and employees

of the facility — of either sex — during the search.  See Israel, 2012 WL 4762082, at *3 ("The

presence of other inmates and officers, males and females, does not alter th[e] determination"

that the strip search of plaintiff was constitutional); Miller v. Bailey, 2008 WL 1787692, at *9

(E.D.N.Y. Apr. 17, 2008) ("[S]trip searches of prisoners in the presence of other inmates and

staff [are] not constitutionally defective, especially in light of legitimate security concerns.")

(citing cases); accord Sattler v. Foster, 37 F. App'x 311, 312 (9th Cir. 2002) ("Occasional

viewing of male prisoners by female correctional officers does not violate the Fourth

Amendment right to privacy or the Eighth Amendment prohibition against cruel and unusual

punishment.").  As we have previously noted, "[n]ot every embarrassment, humiliation, or

psychological discomfort amounts to a constitutional violation."  Arnold v. Westchester Cnty.,

2012 WL 336129, at *11 (S.D.N.Y.), adopted, 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012); see

also Malik, 2012 WL 3345317, at *13 (finding strip search constitutional and granting motion to

dismiss where there was no "physical or sexual abuse").

     Montgomery alleges that when he protested the strip search, C.O. Kane stated, "I don't

care if you are 'Muslim' you still gonna [sic] strip."  Compl. ¶ II.D.  But Montgomery provides

no evidence that the search occurred because of his religion.  Thus, the making of this comment

does not render the strip search unconstitutional.  See Malik, 2012 WL 3345317, at *2, *13 (no

constitutional violation where officers made statements such as "'M[u]sl[i]ms gotta get naked

too'" during strip search) (alterations in original).  Inasmuch as Montgomery makes no mention

whatsoever of his religion, he cannot be viewed as claiming that the strip search violated his

right to the free exercise of religion under the First Amendment.  But even if he had made such a

claim, it would fail.  A free exercise claim requires a showing "that the disputed conduct

8

substantially burdens [a detainee's] sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006) (internal citation omitted).  Once that showing is made, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." Id. at 275; accord James v. Hayden, 2010 WL 3703841, at *3 (S.D.N.Y. Sept. 21, 2010).  Because Montgomery has failed to make this initial showing, any free exercise claim could not withstand a motion for summary judgment.  James, 2010 WL 3703841, at *3 (granting summary judgment in favor of defendants and upholding constitutionality of strip search where plaintiff had alleged that strip search violated his right to free exercise of religion but failed to show a specific burden on his religious rights).

IV.     CONCLUSION

     For the foregoing reasons, the defendants' motion for summary judgment (Docket # 31) should be granted.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

     Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Paul A. Crotty, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Crotty.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474

U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated: May 14, 2013
  New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy mailed to:

Gentry Montgomery
12-A-2616
Auburn Correctional Facility
P.O. Box 618
Auburn, NY  13024

Counsel by ECF